[Civ. No. 5419. Third Appellate District.—March 24, 1936.]

THE PEOPLE, Plaintiff, v. LOUIS P. JOERGER et al., Appellants; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation), Respondent.

Calkins, Hagar, Hall & Linforth and Jesse W. Carter for Appellants.

Louis Ferrari, G. D. Schilling and Chenoweth & Leininger for Respondent.

TUTTLE, J., *pro tem.*—This is an action to condemn a right-of-way for highway purposes. The only controversy is over the award, which was paid into court by plaintiff. The trial court adjudged that such award was owned by, and should be paid to respondent bank, and ordered the clerk of the court to pay the same to respondent. The appeal is from the judgment.

The agreed statement of facts discloses the following situation: On January 25, 1932, plaintiff commenced an action to condemn a right-of-way for highway purposes over and across certain real property owned by appellants, Louis P. Joerger and Beth M. Joerger. On the following day the trial court made an order, under the provisions of section 14, article I of the Constitution of California, to the effect that plaintiff could immediately enter upon possession of the real property sought to be condemned, immediately remove all obstacles from said land and construct said highway thereon. In accordance with said order, plaintiff deposited the sum of $5,994.50 to secure payment of the just compensation to be thereafter determined in said action. Thereafter, plaintiff took possession of said real property, and prior to the trustees' sale hereafter mentioned, cut the brush thereon; cut and removed more than two hundred trees, with a diameter of be-

tween two and three feet; excavated, cut, graded and filled, to the extent that 41,634 yards of dirt were removed and deposited in gulches and low places; brought on the land 4,228 yards of rock, and deposited the same, and commenced the construction of culverts and fences. It was agreed by the parties that by reason of such work, the physical character of the land was so changed that it would have been impossible to restore said land to its original condition.

It also appears that at the time this action was commenced, respondent, Bank of America, was the owner of a deed of trust covering real property belonging to the Joergers, of which the right-of-way sought to be condemned was a part, and that on August 24, 1932, all of said property, including the land here involved, was sold at a trustees' sale pursuant to the terms of said trust deed, and for an amount equal to the full amount of the indebtedness due thereunder, and on August 25, 1932, said lands were conveyed by trustees' deed to Bank of America, purchaser at the sale, and respondents herein. On December 9, 1933, a final order of condemnation was made and entered in said proceeding. This order provided that the amount of the award, $7,500, should remain on deposit until the further order of the court. The court finally ordered said amount to be paid over to respondent bank. The Joergers, former owners of the land, claimed ownership of the award, and they now appeal from that judgment.

The present Constitution of California has always contained a provision to the effect that "Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court, for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in a court of record, as shall be prescribed by law." (Const., art. I, sec. 14.) In fact, this language was the entire text of the section as originally adopted. In 1911 the section was amended in a respect which is not of moment in the present litigation. In 1918 a second amendment was adopted. This amendment opens with the original text as above set forth, the time-honored language

being followed immediately by these provisions: *"provided,* that in an action in eminent domain brought by the state, or a county, or a municipal corporation, or a drainage, irrigation, levee, or reclamation district, the aforesaid state or political subdivision thereof, or district, may take immediate possession and use of any right-of-way required for a public use, whether the fee thereof or an easement therefor be sought upon first commencing eminent domain proceedings according to the law in a court of competent jurisdiction and thereupon giving such security in the way of money deposits as the court in which said proceedings are pending may direct, and in such amounts as the court may determine to be reasonably adequate to secure to the owner of the property sought to be taken immediate payment of just compensation for such taking and any damage incident thereto, including damages sustained by reason of an adjudication that there is no necessity for taking the property, as soon as the same can be ascertained according to law. The court may, upon motion of any party to said eminent domain proceedings, after such notice to the other parties as the court may prescribe, alter the amount of such security so required in such proceedings." The section now stands as it was amended in 1918.

 It is contended by appellants that the action of the state under the order of January 26, 1932, was a "taking" of their real property at a time when they were the owners thereof, and that they are entitled to the award. Respondent contends that there was no "taking", and no compensation due until the final order of condemnation, and as it was the legal owner when such final order was entered, it was the owner of the money deposited with the court.

It is undoubtedly the rule that "compensation in general must be paid to the person who *owned* the property at the time it was taken or injured." (20 C. J., p. 847, sec. 286.) It follows that if entry into possession by plaintiff under the order mentioned, and the various acts of ownership performed by plaintiff constitute a "taking", then appellants were entitled to the compensation. Our Supreme Court has decided very definitely that the act of the state in entering into possession of the property and proceeding to construct the highway was a "taking" of the property as that term is used in the provisions of the Constitution above quoted. In 1897 the legislature of California attempted to place in the Code

of Civil Procedure by an amendment to section 1254, a law which is almost identical to the amendment of section 14, article I of our Constitution, adopted in 1918. The constitutionality of section 1254 was challenged in the case of *Steinhart* v. *Superior Court,* 137 Cal. 575 [70 Pac. 629, 92 Am. St. Rep. 183, 59 L. R. A. 404]. The court there states, on page 577, that the most important proposition is whether or not taking possession and using the property during the pendency of the condemnation proceeding is a taking, within the meaning of the Constitution. In disposing of the matter the court says: ''To hold that possession of land may be given to a person seeking to acquire a right-of-way by condemnation, during the pendency of the proceedings and before the amount of the compensation has been determined and paid to the owner or into court for him, would be to hold that this so-called temporary possession is not a taking of private property for a public use. But both on authority and reason it is so.'' The section was held unconstitutional, and the trial court was prohibited from making any order for possession thereunder. Once before the precise point came up in the Supreme Court. In 1863 the legislature attempted to give the railroads this same power of possession, pending an action in condemnation. In the case of *Davis* v. *San Lorenzo R. R. Co.,* 47 Cal. 517, the enactment was held unconstitutional, and we find the following language pertinent to the question here involved: ''However, the rule may be in respect to the time at which the entire title and estate of the owner may be deemed to have been taken for public use, it is indisputable that the qualified estate which the corporation acquires when it enters under the authority of the court must be deemed a *taking pro tanto,* from the time of entry.'' These cases follow the general rule. *''It may be stated as a general rule that there is a taking where the grantee of the power of eminent domain enters upon the land, not for the mere purpose of examination or survey, and does some act evidencing an intention to appropriate it.''* (20 C. J., p. 723, sec. 182.) The evidence of an intent upon the part of the plaintiff in the instant case to ''appropriate'' the property of appellants is overwhelming and beyond dispute.

Respondent makes no attempt to distinguish these unqualified pronouncements of the Supreme Court, although appellants quote extensively from them in their opening brief.

Respondent, on this point, relies entirely upon the case of *Marblehead Land Co.* v. *Superior Court*, 60 Cal. App. 644 [213 Pac. 718]. In that case a condemnation proceeding was started and an order made allowing the state to enter the property under the constitutional provision in question. After possession was taken, the owner of the land secured from the District Court of Appeal a writ of review which stayed all proceedings in the original action. It appears that the officers of the highway commission refused to cease construction of a highway over the property, and they were cited for contempt of court. The opinion does not make clear the precise issues involved. It appears, however, that the court discussed at length several legal questions, and particularly the amendment to the Constitution adopted in 1918, and in so doing used the following language: "That there was, by the amendment of 1918, no attempt to authorize a taking for public use prior to condemnation decree. . . . The organic law merely allows to a would-be condemnor the 'possession' and 'use' of the land or right-of-way sought to be taken finally by the decree of condemnation." No reference was made to the two decisions of the Supreme Court which hold exactly to the contrary in construing identical statutes, nor are any authorities whatever cited. It may be added that the order made in the above case adjudging the parties guilty of contempt was annulled by the Supreme Court in the case of *Fletcher* v. *District Court of Appeal*, 191 Cal. 711 [218 Pac. 391]. If the Marblehead case can be said to uphold the contention of respondents, we take the view that it is not only contrary to the opinions of the Supreme Court cited, but also to the weight of authority, and we consequently are unable to follow it.

It is no doubt the rule, as respondents contend, that in any ordinary condemnation proceeding, where property is purchased which is subject to such pending proceedings, and the deed conveying said property is silent as to the award money to be paid in said proceedings, the money belongs to the purchaser. This is the rule in California. (*Security Co.* v. *Rice*, 215 Cal. 263 [9 Pac. (2d) 817, 82 A. L. R. 1059].) In the ordinary proceeding the property is not "taken" until the final decree is entered. (Code Civ. Proc., sec. 1253.) It is the divesting of the title of the owner and the vesting of the title in the condemnor which constitutes the "taking" in

such cases. But where, as under *our* Constitution, provision is made for a "taking" prior to the divestiture of title, the party who owns the property at the time of such "taking" is entitled to the compensation, under the universal rule found in Corpus Juris, and to which we have referred.

It thus appears that where there is no prior physical "taking", the property is deemed to have been "taken" when title is divested, as possession follows the title. Where there has been a prior physical "taking," the subsequent divestiture of title is merely a confirmation of the original "taking". The effect of the constitutional amendment was merely to accelerate the "taking". To hold otherwise would, in effect, nullify that provision of the Constitution which provides that "private property shall not be taken or damaged for public use without just compensation having been first made or paid into court for the *owner*". As appellants were the owners of the property when it was so "taken", they are entitled to the award.

The judgment is reversed, with directions to the trial court to enter a judgment declaring appellants to be the owners of award, and ordering the clerk to deliver to appellants the compensation deposited with him by plaintiff in said action.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 23, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 21, 1936.